UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.   19-20535-CR-SINGHAL

UNITED STATES OF AMERICA,

    Plaintiff,
v.

RACQUEL LAVETTE BIJOU,

    Defendant.
_____/

**SENTENCING MEMORANDUM**

Undersigned counsel received LL and her aunt's sealed statements on Monday, November 29 at approximately 6:00 PM.  Due to previously scheduled court appointments, counsel's first opportunity to review the statements with Ms. Bijou was on December 1, 2021. Accordingly, counsel is filing this response and sentencing memorandum the same day.

Ms. Bijou has admitted to violating the law and admitted to the facts in this case.  Ms. Bijou has no interest in denigrating LL, but the efforts of the government and the victim's aunt to characterize the defendants as

1

being the genesis and sole source of LL's issues is not accurate, and it is not fair to the defendants.

The victim's aunt describes LL as an academically driven young person who was essentially a model child and student before meeting Ms. Bijou and implies that Ms. Bijou is responsible for all of LL's issues. However, the evidence in this case as well as the records submitted by the government in support of their restitution request demonstrate that that is not accurate.  LL gave a statement to the police that she was on probation in Nebraska before she even traveled to Florida. LL candidly admitted to the police that she was on probation for felony assault of a law enforcement officer and grand theft of a vehicle. LL explained to the police that she stole a vehicle, crashed the vehicle, and physically punched a police officer when he attempted to arrest her. In the discovery provided by the government, one of LL's friends recounted an episode, before LL had met Bijou, where LL engaged in a sexual act in exchange for money with an adult stranger. When Bijou met LL, she had left her residence and had not attended school in weeks. In her statement to law enforcement, Bijou explained that LL had said she was 18 and though she appeared young, she had a streetwise manner that led Bijou to believe that she was much older.

LL was with Ms. Bijou and Mr. Horenstein for approximately two weeks, not the two months she seems to imply. LL had left her father's house and stayed with a series of friends before going to stay with Ms. Bijou. LL implies that she was manipulated and held against her will by Ms. Bijou. That is entirely inaccurate. At some point after they met, Ms. Bijou made an offer to LL. She was upfront about what it would entail. LL declined. Several days later, LL contacted Ms. Bijou, accepted the offer, and asked Bijou to send an Uber to pick her up. When LL arrived, she talked with Bijou before changing her mind a second time and leaving on good terms. Finally, several more days later, LL approached Ms. Bijou a third time and began to work. Rather than being held against her will, while LL was staying with the defendants, she went to stay with her boyfriend for a night. She returned the following day and complained that he had stolen $2,000 from her and said that she wanted to make more money. In addition to staying with her boyfriend, LL had friends visit her while with the defendants.

After the altercation between Ms. Bijou and Mr. Horenstein, Bijou left Mr. Horenstein and brought LL to stay with Supra. Supra told the two that they would have to work if they wanted to stay with her. Bijou did not

want to work, decided to leave, and offered to take LL with her. In a statement to the police, LL said that *she* chose to stay with Supra. Bijou never forced, threatened, coerced, or manipulated LL.

LL states that she could not shower or eat with the defendants. That is inaccurate and illogical on its face. Bijou encouraged LL to eat and to take regular showers. Given Bijou and LL's activities, it would make little sense to prevent LL from showering.

The records provided by the government make it plain that LL's issues started before she met Bijou. Ms. Bijou takes full responsibility for her actions in this matter, but should not be held responsible for things that she did not do.

## Ms. Bijou's Background

Undersigned counsel had intended to address issues related to Ms. Bijou's childhood during the sentencing hearing. Undersigned counsel learned today that Ms. Bijou's family does expect to be present during the sentencing hearing. That presents a delicate issue. As the PSI makes clear, Ms. Bijou had a difficult childhood in large part due to her mother's drug use and mental health issues. Ms. Bijou has worked to develop a better relationship with her mother since her incarceration. Undersigned counsel

does not wish to damage this relationship by publicly discussing Ms. Bijou's mother's issues. The defense urges the Court to take into consideration Ms. Bijou's childhood challenges when formulating an appropriate sentence.

Despite Ms. Bijou having been raised without a father and her mother losing custody of her as a young child, Ms. Bijou was a model student in school. She graduated from North Miami Beach Senior High School in January 2019 and began studies at Johnson and Wales University in March 2019. Unfortunately, Ms. Bijou turned to prostitution when the minimum wage jobs she held proved insufficient to pay the costs and fees at Johnson and Wales that her scholarship did not cover. Ms. Bijou's family did not have the resources to assist her. Ms. Bijou's life began to spiral out of control at that point leading to her arrest a mere five months later. In the space of five months, she went from a high school graduate and college student with an unblemished record and a bright future to an incarcerated individual facing a fifteen-year mandatory minimum sentence. Ms. Bijou made terrible choices during those five months, but her age, inexperience, and upbringing are all factors the Court should consider when imposing sentence in this matter.

WHEREFORE, the defendant requests that the Court vary from the sentencing guidelines and impose the minimum sentence authorized by law.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY:   ***R. D'Arsey Houlihan***
      R. D'Arsey Houlihan
      Assistant Federal Public Defender
      Florida Bar No. 100536
      150 W. Flagler Street, Suite 1700
      Miami, Florida 33130-1556
      (305) 530-7000/(305) 536-4559, Fax
      D'Arsey_Houlihan@FD.org, E-Mail

## CERTIFICATE OF SERVICE

I HEREBY certify that on **December 1, 2021**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/R. D'Arsey Houlihan
R. D'Arsey Houlihan